UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REGENCY CENTERS, L.P., | CASE NO. C13-1828 MJP |
| Plaintiff, | ORDER GRANTING SUMMARY JUDGMENT |
| v. | |
| RANDY LARSEN, | |
| Defendant. | |

This matter is before the Court on Plaintiff's motion for summary judgment. (Dkt. No. 11.) The Court considered the motion, Defendant's response (Dkt. No. 14), Plaintiff's reply (Dkt. No. 17) and all related documents. The Court GRANTS the motion and awards summary judgment in favor of Plaintiff.

**Background**

**A.  The Lease**

On July 14, 2008, Regency Centers, L.P. ("Regency"), the landlord, and Pita Palmer LLC ("Pita Pit"), the tenant, entered into a lease agreement ("the Lease") to operate a Pita Pit restaurant for 120 months.  (Dkt. No. 12-1 at 5.)  Under the Lease, governed by Washington law,

1  Regency may bring an action to collect the rent and damages "including consequential damages

2  without canceling" the Lease in the event Pita Pit defaults on its rent. (<u>Id.</u> at 17, 21.) Pita Pit is

3  also required to pay Regency costs and expenses, including attorneys' fees, Regency incurs in

4  "reletting or in making such alterations and repairs not covered by the rental received from such

5  reletting." (<u>Id.</u> at 18.) Regency is required to use "reasonable efforts to mitigate its damages

6  related to a default" to the extent required by applicable law. (<u>Id.</u>)

7     In the event of a default under the Lease by Pita Pit, Pita Pit may propose other potential

8  tenants to take over the Lease in an attempt to mitigate damages. Pita Pit is required by the terms

9  of the Lease to submit certain information to Regency regarding a potential transferee before

10  Regency will consider the proposed new tenant. (Dkt. No. 12-1 at 16.) The required information

11  includes the name of the transferee, a detailed description of the transferee's business, the

12  transferee's financial statements, written agreements governing the transfer, a driver's license if

13  the transferee is an individual, a fee, and any other information reasonably requested by

14  Regency. (<u>Id.</u>) No transfer releases Pita Pit of its obligations under the Lease. (<u>Id.</u>)

15    **B.  The Guaranty**

16     Mr. Larsen was named as one of the guarantors of the Lease. (Dkt. No. 12-1 at 5.)

17  Under the guaranty, which is also governed by Washington law, Mr. Larsen "absolutely,

18  unconditionally and irrevocably guarantees the prompt and complete payment and performance

19  when due . . . of all obligations . . . arising under the [Lease]." (<u>Id.</u> at 38.) The guaranty remains

20  in effect until obligations are satisfied in full and the lease is either terminated or fully

21  performed. (<u>Id.</u> at 39.) Mr. Larsen also agrees under the guaranty to reimburse Regency for

22  attorneys' fees and costs incurred by Regency if it has to enforce the guaranty. (<u>Id.</u>)

23

24

ORDER GRANTING SUMMARY JUDGMENT- 2

### C.  Default, Abandonment, and Efforts to Obtain New Tenant

The Parties agree as to the basic facts of the breach of the Lease. (Dkt. No. 14 at 2.) Larsen does not dispute that Pita Pit entered into the lease with Regency, and agrees he personally executed a guarantee agreement for the Lease. (Id.) Larsen also agrees Pita Pit "failed to honor its lease obligations and ultimately abandoned the leased premises[.]" (Id.)  The only dispute in this case is whether Regency properly mitigated damages, and whether Regency properly accounted for leasehold improvements Mr. Larsen alleges were made to the property during the lease term. (Id.)

Mr. Larsen asserts Pita Pit "began experiencing financial difficulties related to the declining economy" in 2009 and proposed ways to modify the Lease, including reducing the rent or subleasing to a new tenant.  (Dkt. No. 15 at 2.)  Although Regency temporarily reduced the rent, Mr. Larsen said Pita Pit's financial troubles continued, so it contacted Regency in the summer of 2012 about subletting to a new tenant.  (Id.)  Mr. Larsen maintains Regency refused to work with Pita Pit "on securing an arrangement for a new usage of the commercial space or to sublease the property."  (Id.)  Mr. Larsen contends, in late spring or early summer of 2013, Pita Pit proposed subleasing the premises to a "frozen yogurt franchise that was interested in using the property and potentially assuming the Lease with certain revisions."  (Id.)  Mr. Larsen asserts Pita Pit also proposed another rent reduction or "leasing the space to a new tenant with all the leasehold improvements" already in place.  (Id.)  According to Mr. Larsen, Regency refused to work with Pita Pit on these proposals.  (Id.)  Regency contends it requested from Pita Pit supporting financial documentation regarding the frozen yogurt franchise but never received any. (Dkt. No. 18 at 4.)

Chris Daniell ("Mr. Daniell"), the property manager for Regency, alleges Pita Pit began to default on its rent in January 2013.  (Dkt. No. 12 at 3.)  Regency served Pita Pit and Mr.

Larsen a "Three-Day Notice to Pay Rent or Surrender Possession of Premises" on July 3, 2013. (Id.; Dkt. No. 21-1 at 60.) Pita Pit vacated the leased premises and sent Regency a "Notice of Abandonment," signed by Mr. Larsen, on July 22, 2013. (Dkt. No. 12 at 3; Dkt. No. 12-1 at 63.) In the "Notice of Abandonment," Mr. Larsen stated:

> 1. No personal property of Tenant remains within the leased premises or any personal property has been affirmatively abandoned by Tenant and Tenant authorized Landlord to remove o[r] dispose of the same.
>
> 2. In reliance upon this Notice, Tenant expressly authorizes Landlord immediately to enter and retake possession of the leased premises.

(Dkt. No. 12-1 at 63.) Mr. Larsen said Pita Pit left the premises "allowing Regency to retain the substantial leasehold improvements." (Dkt. No. 15 at 3.) He also contends, after Pita Pit abandoned the premises, Pita Pit proposed subleasing the premises to a "Japanese style fast food restaurant that was ready and willing to rent the space[,]" but Regency failed to respond to its proposal. (Id.)

After receiving the "Notice of Abandonment," Regency retook possession of the leased premises and allegedly began looking for a new tenant. (Dkt. No. 12 at 4.) At the same time, Regency's legal counsel demanded payments owed by Mr. Larsen. (Id.) Mr. Larsen has not satisfied the amount Regency believes is owed. (Id.) On October 8, 2013, Regency executed a new lease for the premises with a company named Vision Plus, which will run through January 31, 2019. (Id.) Regency altered the premises to make it suitable for the new business. (Id.) On October 21, 2013, Vision Plus took possession of the premises and began paying rent on January 29, 2014, when the lease commenced. (Id.)

**D. Procedural Posture**

Regency sued Mr. Larsen for breach of contract and declaratory relief in October of 2013 after Pita Pit defaulted on its rent and abandoned the leased premises. (Dkt. No. 1.) Regency

1  filed this Motion for Summary Judgment in March of 2014, requesting (1) an award of damages,

2  (2) a declaration as to Mr. Larsen's continuing liability, and (3) attorneys' fees.  (Dkt. No. 11.)

3  As discussed above, in Mr. Larsen's response, he acknowledges Pita Pit defaulted on its

4  obligations and abandoned the premises but argues material issues of fact remain as to the

5  damages amount because Regency failed to reasonably mitigate its damages.  (Dkt. No. 14.)

6  Regency contends in its reply it reasonably mitigated its damages, and attempts by Mr. Larsen to

7  supply a replacement tenant were not made in accordance with the Lease terms.  (Dkt. No. 17.)

8  This Court gave Mr. Larsen the opportunity to respond and provide additional evidence he

9  complied with the Lease in suggesting replacement tenants. (Dkt. No. 19.) Mr. Larsen responded

10  indicating he had no additional evidence and accepted the evidence put forth previously by

11  himself and by Regency. (Dkt. No. 20 at 1.)

**Discussion/Analysis**

**A.  Legal Standard**

Summary judgment is appropriate under Fed. R. Civ. P. 56(a) "if the movant shows that

there is no genuine dispute as to any material fact."  See Celotex Corp. v. Catrett, 477 U.S. 317,

327 (1986).  Inferences drawn from the underlying facts must be viewed in the light most

favorable to the non-moving party.  Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986).  When the moving party has met its burden of showing no genuine

issue of fact exists, "its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts."  Id. at 586.  The non-moving party must come

forward with specific facts showing a genuine issue exists for trial.  Id. at 587.  No genuine issue

for trial exists if the "record taken as a whole could not lead a rational trier of fact to find for the

non-moving party."  Id.

ORDER GRANTING SUMMARY JUDGMENT- 5

**B.  Efforts to Mitigate**

"The doctrine of avoidable consequences, also known as mitigation of damages, prevents recovery for damages the injured party could have avoided through reasonable efforts." Cobb v. Snohomish Cnty., 86 Wn. App. 223, 230 (1997).  The injured party is to use means reasonable under the circumstances to minimize or avoid damages. Id.  Whether the means were reasonable is a question for the jury when reasonable minds could differ.  TransAlta Centralia Generation LLC v. Sicklesteel Cranes, Inc., 134 Wn. App. 819, 826 (2006).  The burden of proving a failure to mitigate is on the party whose wrongful conduct caused the damages.  Cobb, 86 Wn. App. at 231.  The language in the Lease reflects the law: "To the extent required by applicable law, [Regency] shall use reasonable efforts to mitigate its damage related to a default[.]"  (Dkt. No. 12-1 at 18.)

Regency asserts it acted reasonably in mitigating its damages.  (Dkt. No. 17 at 4.)  Mr. Daniell states Regency "immediately began efforts to re-let the premises to a new tenant" after it received the "Notice of Abandonment" on July 22, 2013.  (Dkt. No. 12 at 3-4.)  Less than three months later, Regency "executed a lease with Vision Plus" for the premises Pita Pit occupied.  (Id. at 4.)  Vision Plus began paying rent when the lease commenced on January 29, 2014.  (Id.) Although the rent Vision Plus is paying is less than what Pita Pit paid, Mr. Daniell states "Regency could not obtain a tenant willing to pay [r]ent equal to what Pita [Pit] had previously agreed."  (Id. at 5.)  Mr. Daniell explains the lower rent "is a reflection of the economic reality that the commercial rental market in late 2013 was different than and not as strong as it was in 2008[.]"  (Id.)

Mr. Larsen contends Regency failed to mitigate its damages when it did not "entertain [his] proposals for new tenants to assume the Lease or sublet the premises" before and after Pita

ORDER GRANTING SUMMARY JUDGMENT- 6

1    Pit abandoned the premises.  (Dkt. No. 14 at 5.)  Pita Pit told Regency prior to its "Notice of

2    Abandonment" it had a "related party," a frozen yogurt franchise, that was "very interested" in

3    renting the premises.  (Dkt. No. 18 at 8.)  Mr. Larsen also said Pita Pit informed Regency about a

4    Japanese style fast food restaurant that was "ready and willing to rent the space" after it left the

5    leased premises.  (Dkt. No. 15 at 3.)  Mr. Larsen contends Regency refused to work with Pita Pit

6    on finding a new tenant even though it attempted to negotiate with Regency before and after Pita

7    Pit defaulted on its obligations and abandoned the premises.  (Id. at 2 -3.)  Regency maintains

8    Pita Pit never provided the requested and required supporting financial documentation for the

9    frozen yogurt franchise.  (Dkt. No. 18 at 4; Dkt. No. 12-1 at 16.)

10           The Court agrees there is no issue of material fact as to whether Regency properly

11   mitigated damages. The Lease agreement clearly contains specific requirements for proposed

12   transferees from a tenant, including the name of the transferee, a detailed description of the

13   transferee's business, the transferee's financial statements, written agreements governing the

14   transfer, a driver's license if the transferee is an individual, a fee, and any other information

15   reasonably requested by Regency.  (Dkt. No. 12-1 at 16.)  Regency submitted documentation

16   indicating it asked Larsen for the required documentation after the names of potential transferees

17   were suggested. (Dkt. No. 18 at 8, 12.) The Court gave Mr. Larsen an opportunity to respond to

18   the documentation (Dkt. No. 19), and Mr. Larsen submitted a document stating he does not

19   oppose Regency's representation of the conversation. (Dkt. No. 20 at 1.) The Court is persuaded

20   Regency responded appropriately in requiring Mr. Larsen to comply with the Lease before

21   considering proposed transferees, and that Regency otherwise properly mitigated damages. No

22   issue of material fact exists as to mitigation.

23

24

### C. Leasehold Improvements

The Court also finds Mr. Larsen failed to raise a genuine issue of material fact as to the alleged leasehold improvements. Mr. Larsen argues Regency did not take into account the approximate $250,000 Pita Pit spent on leasehold improvements when determining its damages. (Dkt. No. 14 at 6; Dkt. No. 15 at 2.) Regency contends Mr. Larsen "waived any claim or defense against Regency for the value of alleged leasehold improvements" when it signed the "Notice of Abandonment." (Dkt. No. 17 at 7.) The "Notice of Abandonment," signed by Mr. Larsen, stated:

> No personal property of Tenant remains within the leased premises or any personal property has been affirmatively abandoned by Tenant and Tenant authorized Landlord to remove o[r] dispose of the same.

(Dkt. No. 12-1 at 63.) The language in this notice, along with Mr. Larsen's statement, "Upon receiving the Three-Day Notice, Pita [Pit] left the space allowing Regency to retain the substantial leasehold improvements[,]" indicate Mr. Larsen gave up any claim to reimbursement for the alleged leasehold improvements. (Dkt. No. 15 at 3.)

### Conclusion

The Court GRANTS summary judgment in favor of Regency in accordance with the lease contract. Defendant does not contest the value of damages, beyond his arguments regarding failure to mitigate and the impact of alleged leasehold improvements, which the Court rejects. The Court therefore Orders:

    (1) Defendant is liable for damages accrued under the lease agreement in the amount of $85,848.51, and prejudgment interest;

    (2) It is declared that Defendant Randy Larsen has an unconditional obligation under the Guaranty and Lease with respect to future damages; and

1     (3) Defendant is responsible for Plaintiff's attorneys' fees and costs in accordance with the

2          terms of the lease.

3          The clerk is ordered to provide copies of this order to all counsel.

4          Dated this 23rd day of May, 2014.

5

6

7                                                        Marsha J. Pechman

8                                                        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING SUMMARY JUDGMENT- 9